UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

NIDA PROPERTY INC.,

                      Debtor.
-------------------------------------------------------------X

Chapter 7

Case No: 24-42408-jmm

**ORDER CONFIRMING THE CHAPTER 7 TRUSTEE'S
SALE OF THE DEBTOR'S REAL PROPERTIES LOCATED AT 808-814 EAST 16TH
STREET, BROOKLYN, NEW YORK 11230**

Upon the Order of this Court dated October 21, 2025 (Dkt. No. 77) (the "Sale Procedures Order"), granting the motion of Richard J. McCord, Esq., the Chapter 7 Trustee ("Trustee") for the Estate of Nida Property Inc. (the "Debtor"), pursuant to 11 U.S.C. §§ 105, 363(a), (b), (f) and (m), and 365(a) and (f) and Rules 2002, 6004 and 9004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), (i) authorizing the Trustee to sell the real properties located at: 808 East 16th Street, Brooklyn, New York 11230 (Block 06699, Lot 9) ("808 Property"), 810 East 16th Street, Brooklyn, New York 11230 (Block 06699, Lot 10)("810 Property"), 812 East 16th Street, Brooklyn, New York 11230 (Block 06699, Lot 11)("812 Property"); and 814 East 16th Street, Brooklyn, New York 11230 (Block 06699, Lot 12)("814 Property")(808 Property, 810 Property, 812 Property, and 814 Property, collectively the "Brooklyn Properties"), pursuant to the terms as set forth in the Purchase and Sale Agreement between "Richard J. McCord, as Chapter 7 Trustee for the Estate of Nida Property Inc." as seller, and "808 E16 AM LLC, 810 E16 AM LLC, 812 E16 AM LLC and 814 E16 AM LLC, by and through Aaron Maleh", as purchaser ("Maleh" or Proposed Stalking Horse Purchaser"), and executed by Proposed Stalking Horse Purchaser on September 15, 2025, for the sum of Two Million Seven Hundred Fifteen Dollars ($2,715,000.00) (the "Purchase Price"), subject to higher and betters offers at public auction, free and clear of all

liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other interests (collectively, the "Liens") to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; (ii) as part of the sale, assuming and assigning any and all leases and/or tenancies, if any, for any occupants in the Brooklyn Properties; (iii) scheduling a hearing to approve the sale of the Brooklyn Properties to the successful bidder; (iv) approving terms and conditions for submitting offers and approving the form and manner of notice with respect to the proposed auction and hearing; and (v) granting such other, further and different relief as this Court deems just, proper and equitable; and upon the Affidavit of Service evidencing proof of service of the Sale Order having been filed with the Court on October 22, 2025; and the Auction Sale scheduled for November 6, 2025 at 11:00 a.m. having been cancelled as no qualified bids were received by the November 5th, 2025 bid deadline; and said Notice of Cancelled Auction Sale having been filed on November 6, 2025; and there being no higher bidders; and, therefore, the proposed stalking horse purchaser, Maleh, is the successful bidder (the "Successful Bidder"), having bid the sum of $2,715,000.00; and the Successful Bidder, having provided to the Trustee a total deposit in the amount of $271,500.00 (the "Contract Deposit") on September 12, 2025; and the Trustee having determined that the offer from the Successful Bidder as contained in the Contract of Sale, dated September 15, 2025 (the "Stalking Horse Contract") to purchase the Brooklyn Properties for the sum of $2,715,000.00 is the highest and best offer for the Brooklyn Properties; and no objections to confirmation of the sale to the Successful Bidder, having been filed or asserted and the sale confirmation hearing scheduled for November 18, 2025 at 2:00 p.m. having been cancelled pursuant to the notice of cancelled auction sale; and no additional notice is necessary or required:

THE COURT FINDS AND DETERMINES THAT FOR THE REASONS SPREAD ACROSS

THE RECORD OF THIS CASE:

    a)     The Court has jurisdiction with respect to the sale of the Brooklyn Properties.

    b)     The Trustee is authorized to sell the Brooklyn Properties.

    c)     Proper, timely, adequate and sufficient notice of the Auction Sale was provided in accordance with Bankruptcy Code §§ 102, 363(b), (f), and (m) and Bankruptcy Rules 2002 and 6004, to all necessary creditors and Parties in Interest, which notice adequately described the notice of the Auction Sale.

    d)     The offer from the Successful Bidder, to purchase the Brooklyn Properties for the sum of $2,715,000.00 is the highest and best offer received by the Trustee.

    e)     The sale to the Successful Bidder is an arms' length transaction and is being entered into in good faith by the parties.

    f)     In the absence of a stay pending appeal prior to the closing, the Successful Bidder, will be acting in good faith pursuant to Bankruptcy Code § 363(m) in closing on the sale of the Property after the entry of this Order.

**NOW, THEREFORE, IT IS HEREBY**

    **ORDERED** that, pursuant to Bankruptcy Code § 363(b), (f) and (m), the Trustee is authorized and empowered to sell the Brooklyn Properties to the Successful Bidder, or an entity owned and controlled solely by the Successful Bidder, free and clear of any and all liens, claims and encumbrances (collectively, "Liens"), with such Liens to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale, for the sum of $2,715,000.00 (the "Purchase Price") in accordance with a contract of sale substantially in the form of the Stalking Horse Agreement approved by this Court in the Sale Procedures Order; and it is further

    **ORDERED** that the sale of the Brooklyn Properties to the Successful Bidder, is subject to

the Terms and Conditions of Sale; and it is further

**ORDERED** that, in accordance with the Sale Procedures Order, the Brooklyn Properties are being sold free and clear of all Liens, which Liens shall attach to the proceeds of sale with the same validity and priority as such Liens had prior to the sale; and it is further

**ORDERED** that, in the absence of a stay pending appeal, if the Successful Bidder, closes on the sale of the Brooklyn Properties in compliance with the provisions of the Sale Procedures Order, the Terms and Conditions of Sale, and the Stalking Horse Agreement, then the parties shall be entitled to the protection of Bankruptcy Code §363(m), or any authorization contained herein in its entirety on appeal, and provided further that the purchase of the Brooklyn Properties by the Successful Bidder, constitutes a good faith purchase for fair value within the meaning of Bankruptcy Court § 363(m); and it is further

**ORDERED** that in the event that the Successful Bidder fails to close on the sale of the Brooklyn Properties in accordance with the provisions of the Sale Procedures Order, the Terms and Conditions of Sale, and the Stalking Horse Agreement then the Trustee is entitled to retain Successful Bidder's, or an entity owned by the Successful Bidder's, deposit; and it is further

**ORDERED** that the fourteen-day (14) stay provided for in Bankruptcy Rules 6004(h) shall not be in effect and, pursuant to Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry; and it is further

**ORDERED** that, subject to verification of amounts owed, within five (5) days after the clearing of the sale proceeds from the closing on the sale of the Brooklyn Properties, pursuant to section 363 of the Bankruptcy Code, the Trustee is authorized to pay from the gross proceeds thereof, less usual and customary closing costs, the valid Liens against the Brooklyn Properties (which shall include, without limitation, the payment of New York City's liens for any unpaid real

estate taxes and water and sewer charges, and other valid fees and charges), in the same order of priority as such Liens had prior to the sale; and it is further

**ORDERED** that MYC & Associates, Inc. shall be entitled to a commission in connection with the sale of the Brooklyn Properties in accordance with the order approving its retention, after a hearing on proper application; and it is further

**ORDERED**, that pursuant to New York Tax Law §1405(b)(8), the Trustee is exempt from paying real estate transfer taxes to New York State for the conveyance of the Brooklyn Properties; and it is further

**ORDERED**, that the Successful Bidder is responsible to pay all other transfer taxes, including, without limitation, one-half (1/2) of the New York City transfer tax, the so-called "mansion tax" and any transfer taxes imposed upon a Stalking Horse Purchaser by statute, the title insurance premium and the costs of searches and services charge by the Title Company (if any), the cost of all recording charges in connection with the closing other than the charges incurred to record documents in connection with the clearing of title by Trustee pursuant to the Stalking Horse Contract of Sale (which recording charges shall be paid by Trustee), except as otherwise provided therein, but pending proof of payment of said transfer taxes by the Successful Bidder, the Trustee shall hold in escrow sufficient funds to pay said transfer taxes; and it is further

**ORDERED**, that the Successful Bidder is entitled to, and hereby is granted, the protections afforded by Section 363(m) of the Bankruptcy Code with respect to the Brooklyn Properties; and it is further

**ORDERED** that each and every federal, state and local government agency or department is hereby directed to accept any and all documents necessary and appropriate to consummate the sale of the Brooklyn Properties outlined herein and a copy of this Order may be filed in any place

5

where state, federal or local law permits filing or recording; and it is further

**ORDERED** that the Trustee is authorized and empowered to execute such documents, enter into, and to take such actions as are necessary to implement the terms of this Order and effectuate the closing of title to the Brooklyn Properties.